**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON WISEMAN, d/b/a JASON ANARCHY GAMES, WISEMAN INNOVATION <br><br> Plaintiff, <br><br> v. <br><br> Marc Goldner, individually and as officer of GOLDEN BELL ENTERTAINMENT LLC and GOLDEN BELL STUDIOS, LLC and GOLDEN BELL ENTERTAINMENT LLC and GOLDEN BELL STUDIOS, LLC <br><br> Defendants. | **No. 1:19-cv-01282-AJN** <br><br> **ECF Case** |

**PLAINTIFF JASON WISEMAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

**CHINTA, PERDOMO, BERKS & FRATANGELO, LLP**
Francelina M. Perdomo, Esq.
Antoaneta V. Tarpanova, Esq.
17 State Street, Suite 4000
New York, NY 10004
Tel: (212) 274-1261
fperdomo@chintaperdomo.com
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ---------------------------------------------------------------------- ii

TABLE OF AUTHORITES ------------------------------------------------------------------iv

Preliminary Statement ---------------------------------------------------------------------1

Procedural History -------------------------------------------------------------------------2

Standards and Pleading Requirements --------------------------------------------------2

A. Motion to Dismiss ---------------------------------------------------------------------2

B. Pleading Alternative and Inconsistent Theories Permitted-------------------------------------3

Argument ------------------------------------------------------------------------------------3

A. Plaintiff States a Claim Under the Digital Millennium Copyright Act-------------------------------3

B. Plaintiff States a Claim for Tortious Interference with Business Relations -------------------------5

    1.    Megan McKay ("McKay") -----------------------------------------------------5

  a.    18 U.S.C. § 1001(a)----------------------------------------------------------6

    2.    Jonathan Rawlings ("Rawlings")----------------------------------------------7

  a.    Libel----------------------------------------------------------------------------7

    3.    Kickstarter Backers ("Kickstarter")----------------------------------------8

  a.    18 U.S.C. § 1341 -------------------------------------------------------------9

C. Plaintiff Alleges Different Damages for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing-------------------------------------------------------------------9

D. Plaintiff's Breach of Fiduciary Duty Claim is Separate from His Breach of Contract Claim---- 10

E. Plaintiff's Causes of Action for Unjust Enrichment, a Constructive Trust, and an Accounting Are Asserted Against Non-Parties to the Contract.--------------------------------------------- 12

F. Fraud in the Inducement is Properly Pled ---------------------------------------------- 13

a.   We Sell Well Over 10,000 Units Per Quarter ------------------------------------------- 14

b.   We Expect 10,000 Minimum Order Purchases --------------------------------------- 14

c.   We Paid $20,000.00 to one Artist Last Quarter ----------------------------------- 15

G. Libel is Properly Pled ------------------------------------------------------------------------------- 16

H. Plaintiff Does Not Assert A Cause of Action to Peirce the Corporate Veil ----------------------- 16

I.  Declaratory Relief is Properly Pled ------------------------------------------------------------- 17

1.   Defendants Should Be Estopped from Challenging Jurisdiction ------------------------- 17

2.   The Agreement -------------------------------------------------------------------------- 18

3.   The Games ------------------------------------------------------------------------------ 19

J.  The Amount in Controversy Exceeds $75,000.00 ------------------------------------------------ 20

1.   Pretending ------------------------------------------------------------------------------ 21

2.   Parenting -------------------------------------------------------------------------------- 22

3.   Turtles ----------------------------------------------------------------------------------- 22

4.   Webcomic ------------------------------------------------------------------------------- 23

K. Leave to Replead ------------------------------------------------------------------------------------- 24

Conclusion ------------------------------------------------------------------------------------------------------ 25

# TABLE OF AUTHORITES

## CASES

Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 176 (2nd Cir. 2000)-------------------18

Kidz Cloz, Inc. v. Officially For Kids, Inc., No. 00 Civ. 6270 (DC), 2002 WL 392291, at 4-5

(SDNY 2002) -----------------------------------------------------------------------------------13

EBC 1, Inc. v. Goldman, 50 N.Y.3d 11, 19 (2005)---------------------------------------------------13

Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC, 56 F. Supp. 3d 436, 446 (S.D.N.Y. 2014)----19

Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) ----------------------------------------15

Ashland Mgmt., Inc. v. Janien, 82 N.Y.2d 395, 403 (1993) ------------------------------------------22

Banc of America Securities LLC v. Solow Bldg. Co. II, L.L.C., 47 A.D.3d 239 (1st Dept. 2007)20

Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 176 (2nd Cir. 2000)-------------------- 9

Cortes v. 21st Century Fox Am., Inc., 751 F. App'x 69 (2d Cir. 2018) ------------------------------15

Dervan v. Gordian Grp. LLC, No. 16-CV-1694 (AJN), 2017 U.S. Dist. LEXIS 176015 (S.D.N.Y.

Oct. 23, 2017)-----------------------------------------------------------------------------------------26

Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016) -------------------------------------------------- 5

Dukes v. N.Y.C. Emples. Ret. Sys., 581 F. App'x 81 (2d Cir. 2014) --------------------------------- 5

Estrada v. Dugow, 2016 U.S. Dist. Lexis 44284 (SDNY 2016)--------------------------------------15

Friends Lbr. v. Cornell Dev. Corp., 243 A.D.2d 886, 888, 663 N.Y.S.2d 327 (3rd Dept. 1997)--20

GW Holdings Group, LLC v. US Highland, Inc., SDNY 13, 2019 --- F.Supp.3d ----2019 WL 1173

----------------------------------------------------------------------------------------------------22

Impax Media v. Northeast Advertising Corp., 2018 WL 3962841 (S.D.N.Y 2018)----------------13

Jiggetts v. UPS, No. 14-CV-8291, 2017 U.S. Dist. LEXIS 44543 (S.D.N.Y. Mar. 27, 2017)----- 4

Liberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992) ---------------- 18

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) ----------------------------------------- 5

Neuman v. Pike, 591 F.2d 191 (2nd Cir. 1979) ------------------------------------------------------20

Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc., 2009 US Dist. Lexis 55168 (SDNY

    2009) ----------------------------------------------------------------------------------------------------20

Sasson v. Presse, 2016 US Dist. Lexis 52902 (SDNY 2016) -------------------------------------21

Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394 (2nd Cir. 2003) -------------22

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) -------------------------------15

Silverberg v. SLM Acquisitions LLC, 2017 US Dist. Lexis 27204 (SDNY 2017) -----------------20

Sokol Holdings, Inc. v. BMB Munai, Inc., 726 F. Supp. 2d 291, 306 (SDNY 2010) --------------13

United States v. Twenty MILJAM-350 IED Jammers, 669 F.3d 78 (2nd Cir. 2011) --------------20

Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC, 455 Fed. Appx. 102, 105

    (2nd Cir. 2012)-------------------------------------------------------------------------------------------- 7

Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F Supp.2d 391 (SDNY 2011)--------21

Wolfson v. Wolfson, 2004 US. Dist. Lexis 1485 (SDNY 2004) -------------------------------------20

STATUTES

17 U.S.C. § 512(f)----------------------------------------------------------------------------------------- 5

RULES

Fed. R. Civ. P. 12(b)(1)----------------------------------------------------------------------------------- 5

Fed. R. Civ. P. 12(b)(6)---------------------------------------------------------------------------------- 4, 5

Fed. R. Civ. P. 8(d)(2) and (3)-------------------------------------------------------------------------5, 20

Fed. R. Civ. P. 9(b)------------------------------------------------------------------------------- 15, 20

## Preliminary Statement

Defendants moved to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P 12(b)(1) and (6) on April 29, 2019.  Defendants submitted two separate briefs, one on behalf of Marc Goldner ("Goldner") and Golden Bell Studios, LLC ("GB Studios") and the other on behalf of Golden Bell Entertainment, LLC ("Golden Bell"). Plaintiff's opposition brief addresses both of defendants' motions, which should be denied because the Amended Complaint and accompanying declarations allege all the required elements of the causes of action pled.

This case is one of many in which defendant Goldner, through his beneficially owned companies, Golden Bell  and GB Studios employed fraudulent tactics for purposes of acquiring intellectual property of independent creators for free or at a substantial discount.  Marc Goldner's *modus operandi* is to choose his targets by monitoring the Kickstarter platform and identifying interesting campaigns to "shop" for creative talent. With his fast-paced rhetoric and false promises of increased sales, big box retailers, and other revenue streams, Goldner lures his unsuspecting victims into signing one sided ambiguous contracts which purportedly assign all their intellectual property rights to Goldner's companies in exchange for little to no compensation at all.  Once the creators' show first signs of discontent with defendants' fraudulent business practices, including failure to pay royalties, Goldner's litigation threats take center stage.

Consistent with his *modus operandi*, Goldner skillfully used intimidation tactics to convince plaintiff that he was responsible for a trademark dispute between defendants and Megan McKay, plaintiff's collaborator in the "Pretending to Grownup" game. As a result, plaintiff created additional games to cover for defendants' legal fees in the trademark dispute with McKay and also signed addenda to his Purchase Agreement purportedly assigning additional works to defendant Golden Bell

1

for free. Plaintiff finally sought counsel when he received yet another – fourth – proposed addendum from Goldner requiring plaintiff to assign his past, present and future works. This action followed.

## Procedural History

Plaintiff filed a summons and complaint on February 11, 2019, and an Amended Complaint on February 25, 2019 ("Complaint"). **Docket No. 12.** The Complaint included a declaration from plaintiff with exhibits, **Docket No. 12-1,** a declaration from Jonathan Rawlings, **Docket No.12-28** and a declaration of Alex Cohen**, Docket No. 12-30.** Defendants moved to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P 12(b)(1) and (6) on April 29, 2019[1].

## Standards and Pleading Requirements

### A.    <u>Motion to Dismiss</u>

In <u>Jiggetts v. UPS</u>, No. 14-CV-8291, 2017 U.S. Dist. LEXIS 44543 (S.D.N.Y. Mar. 27, 2017)(AJN), this Court stated the law applicable to a Fed. R. Civ. P. 12(b)(6) motion:

> To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).
>
> A court evaluating a motion under Rule 12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." <u>LaFaro v. N.Y. Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a

---

1  Defendants' counsel failed to provide plaintiff with an opportunity to discuss a possible amendedment of the Complaint in good faith to avoid motion practice, as per the Individual Practice Rules of Honorable Sarah Netburn. See Rule III (a).

factual allegation." _Twombly_, 550 U.S. at 555 (quoting _Papasan v. Allain_, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). The Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." _ATSI Commc'ns, Inc. v. Shaar Fund, Ltd._, 493 F.3d 87, 98 (2d Cir. 2007).

The standards for deciding Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) motions are identical, except that in the former case the Court can consider evidence outside the pleadings such as affidavits and exhibits. See, Makarova v. United States, 201 F.3d 110 (2d Cir. 2000); Dukes v. N.Y.C. Emples. Ret. Sys., 581 F. App'x 81 (2d Cir. 2014).

### B.    Pleading Alternative and Inconsistent Theories Permitted

Fed. R. Civ. P. 8(d)(2) and (3) authorizes both alternative and inconstant claims. In Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016) the Second Circuit stated that:

> Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint. _See_ Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims . . . as it has, regardless of consistency."); Gregory v. Daly, 243 F.3d 687, 701 n. 12 (2d Cir. 2001).  Needless to say, the facts a plaintiff alleges in the complaint may turn out to be self-serving and untrue. But a court at this stage of our proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim. For that reason, the court, in judging the sufficiency of the complaint, must accept the facts alleged and construe ambiguities in the light most favorable to upholding the plaintiff's claim.

### Argument

### A.    Plaintiff States a Claim Under the Digital Millennium Copyright Act

17 U.S.C. § 512(f) of the Digital Millennium Copyright Act ("DMCA") creates a cause of action in favor of the true copyright owner who is injured by any person who knowingly or materially misrepresents that the material or activity is infringing and as a result, a service provider relying on such representation removes or _disables access_ to the material.

3

Defendant Marc Goldner, on behalf of GB Studios, sent a DMCA notice to Kickstarter alleging plaintiff infringed a copyright belonging to Golden Bell. See, **Docket No. 12**, ¶ 103, **Docket No. 12-1**, ¶ 80, **Docket No. 12-26**.  Kickstarter suspended plaintiff's project, and the access to the funds generated by the Kickstarter campaign see, **Docket No. 12**, ¶ 110, and sent plaintiff an email instructing him how to respond to the DMCA notice. See, **Docket No. 12-1**, **Docket No. 12**-26 at p.2. Kickstarter's instructed  plaintiff that his response must: (a) identify the material that "has been removed or disabled," the location at which the material appeared before it "was removed or disabled," and that he has a "good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material."  Id.

As a result of Defendants' actions, plaintiff incurred monetary losses and legal fees. See, **Docket No. 12**, ¶ 111, **Docket No. 12-1**, ¶ 80.

Defendants do not deny knowing they misrepresented their interest in the plaintiff's work. Instead, they claim: (a) Kickstarter did not "takedown" plaintiff's material, and (b) the notice asserted ownership in the physical game and not in its copyright and so the DMCA is inapplicable. See, **Docket No. 30**, Defendant Golden Bell Entertainment LLC's Memorandum of Law in Support of its Motion to Dismiss Plaintiff Jason Wiseman's Amended Complaint,  pp. 4-5, Points III(b) and (C).

The Complaint alleges Kickstarter "suspended plaintiff's project", see, **Docket No. 12**, ¶ 110. Kickstarter's notice to plaintiff stated that his response must: (a) identify the material that "has been removed or disabled," the location at which the material appeared before it "was removed or disabled," and that he has a "good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material." Wiseman, **Docket No. 12-26**. Read together, the

4

reasonable inference the Court can draw is that defendants' notice caused Kickstarter to disable access to plaintiff's funds and campaign content.

Defendants' notice explicitly claimed an interest in plaintiff's copyright. Defendant wrote "Copyright Desc: The game is owned by Golden Bell Entertainment, LLC.  Infringement Desc: Not only is the game *a copyright*, but we own this game and it was *published* without our permission." (emphasis added). **Docket No. 12-1**, ¶ 80, **Docket No. 12-26**.

### B.      Plaintiff States a Claim for Tortious Interference with Business Relations

The Complaint's third cause of action alleges tortious interference with business relations. See, **Docket No. 12**, ¶¶ 127-150.[2] The elements of a cause of action for tortious interference with business relations under New York law are: (1) plaintiff had business relations with a third party, (2) defendant interfered with those business relations, (3) defendant acted for a wrongful purpose or used dishonest, unfair, or improper means (which generally means the conduct must amount to an independent tort or crime), and (4) defendant's actions injured the relationship. Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC, 455 Fed. Appx. 102, 105 (2nd Cir. 2012).

This cause of action alleges defendants interfered with plaintiff's business relations with: (1) Megan McKay, (2) Jonathan Rawlings, and (3) plaintiff's Kickstarter backers.

### 1.   Megan McKay ("McKay")

Plaintiff alleges a business relationship with McKay.  See, **Docket No. 12**, ¶¶ 128-129, **Docket No. 12-15,** correspondence from plaintiff to Goldner regarding McKay. Plaintiff alleges defendants interfered with that relationship by attempting to misappropriate McKay's interest in her

---

2  While the unnumbered 'headline' of the third cause of action refers to tortious interference with contractual relations, the actual numbered paragraphs contain all of the required elements of a claim for tortious interference

"Unipegasaurus" characters by filing a trademark application with the United States Patent and Trademark Office for a mark they did not actually own. Id., ¶¶ 75, 136. Defendants knew plaintiff had an agreement with McKay for the artwork design of the Pretending to Grownup game and the expansions,  and that McKay retained the right to use the character outside the scope of the Pretending to Grownup game. Id., ¶70.  Notwithstanding plaintiff's disclosure regarding McKay's rights, Defendants argued to McKay and plaintiff that plaintiff was the party to blame for defendants' filing of the Unipegasaurus mark because plaintiff had not been forthcoming.   In fact, defendants knew of McKay's rights prior to the signing of the "Purchase Agreement" and as early as February 14, 2017 plaintiff ensure that defendants knew about McKay's rights over Unipegasaurus, precisely because plaintiff wanted to preserve his work relationship with McKay for Pretending to Grownup and other future games. **Docket No. 12-6** and **Docket No. 12-15**, correspondence between Marc Goldner and plaintiff.

Defendants interference also constitutes the potential crime of making false statements to the United States Patent and Trademark Office in violation of 18 U.S.C. § 1001(a).

   a.   18 U.S.C. § 1001(a)
The statute provides:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
shall be fined under this title, imprisoned not more than 5 years…

The United States Patent and Trademark Office is a department or subdivision of the executive branch and trademark applications are matters within the executive branch.

with business relations.

Defendants' statements regarding its ownership of a trademark were false, material, and in writing.  The exceptions to the statute apply only to legislative and judicial matters not applicable in this case.

Finally, plaintiff alleges defendants' conduct injured his business relationship with McKay insofar as McKay ended their collaboration and cancelled several projects on which they had previously agreed to collaborate, including in the Pretending to Grownup expansions. Id., ¶ 138.

### 2.  Jonathan Rawlings ("Rawlings")

Plaintiff alleges a business relationship with Rawlings.  See, **Docket No. 12**, ¶¶ 139, 140, and 143. Plaintiff alleges defendant interfered with that relationship by telling Rawlings that plaintiff "lied" in the past about his intellectual property rights, id., ¶ 144, and that plaintiff stole money from another game artist. See, **Docket No. 12-29**, email correspondence from Marc Goldner to Rawlings. Defendant's interference constitutes the independent tort of libel. Finally, plaintiff alleges defendants' conduct injured his business relationship with Rawlings because the defendants' actions caused him to lose the goodwill he had as a game developer. **Docket No. 12**, ¶ 142.

### a.  Libel

The elements of a cause of action for libel under New York law are: (a) a written defamatory statement of fact concerning the plaintiff; (b) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the allegedly defamatory statement; and (5) special damages or a statement that is defamatory on its face. Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 176 (2nd Cir. 2000).

Certain statements are considered libelous *per se.* They are limited to four categories of statements that: (a) charge plaintiff with a serious crime; (b) tend to injure plaintiff in its

business, trade, or profession, (c) plaintiff has some loathsome disease; or (d) impute unchastity. Liberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). Where statements are libelous *per se,* the law presumes that damages will result and they need not be separately proven.

Defendants' written statement was an email dated November 21, 2018, and it was published to Jonathan Rawlings. See, **Docket No. 12**, ¶ 155; Declaration of Jonathan Rawlings, **Docket No. 12-29**, email from Marc Goldner to Jonathan Rawilings. The statement alleges plaintiff falsely "warranted" that he owned intellectual property which he did not in fact own, and that he improperly "pocketed" money in dealings with another game artist.  The allegation that plaintiff "pocketed" money taken from another game artist can constitute the serious crime of larceny under New York State Penal Law § 155.05(1), or (2).  The statement is therefore libel *per se* and damages are presumed.

3.   Kickstarter Backers ("Kickstarter")

Plaintiff alleges a business relationship with Kickstarter.  **Docket No. 12**, ¶ 147. Plaintiff alleges defendant interfered with that relationship by intentionally delaying filling orders of plaintiff's game, Id., ¶148, and that orders actually shipped were sent using unauthorized and improper mail rate classifications and packaging. See, **Docket No. 12-14**.  This constitutes the independent crime of mail fraud in violation of 18 U.S.C. § 1341. Finally, plaintiff alleges defendants' conduct resulted in multiple complaints from Kickstarter and those complaints damaged his business relationship with them.  See, **Docket No. 12**, ¶ 148. Moreover, some of the backers retracted their commitment to support the game and requested a refund as a result of Golden Bell's actions. See, **Docket No. 12-1**, **Docket 12-24**. Plaintiff relies on the Kickstarter platform to finance the development phase of his

games while building customer confidence and loyalty for future projects. **Docket No. 12-1**, ¶ 47.

      a.   18 U.S.C. § 1341

      The statute provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

      Defendants obtained money or property in the form of reduced postal mail rates from the United States Postal Service by mailing board games to Kickstarter members in media mail envelopes which they were not permitted to do under the applicable postal mailing rate rules. See, Docket No. 12-23, Kickstarter backers' posts of disappointment and requests for returns. They did so under the false pretense that the games in the media mail envelopes were in fact eligible for media mail rates and treatment. And, they did in fact place the improper matter in the postal mail for delivery, completing all of the elements of the crime under the statute. See also Correspondence between plaintiff and Golden Bell, **Docket 12-14**, p. 1.

     **C.**     **Plaintiff Alleges Different Damages for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

      Defendants' sole basis to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing is the damages alleged are "identical" to those contained in his breach of contract claim. See, **Docket No. 30**, p. 10, Point V(b).

This is factually inaccurate. Paragraph 179 of the Complaint alleges defendants breached the implied covenant by attempting to secure trademarks for works belonging to plaintiff and third parties. See, **Docket No. 12**, ¶ 179. Plaintiff also claims defendants' actions resulted in a dispute with a third party (Megan McKay), and that he was required to reimburse defendants for settlement costs. See, **Docket No. 12-1**, ¶¶ 62-65.

These specific factual allegations and resulting damages are separate and distinct from plaintiff's breach of contract action.

### D.    Plaintiff's Breach of Fiduciary Duty Claim is Separate from His Breach of Contract Claim

Defendants argue their obligations to plaintiff are purely contractual and they owe him no fiduciary duty. See, **Docket No. 30**, p. 10, Point VI.  This is factually incomplete and legally incorrect.

The Purchase Agreement at issue ("Agreement") made defendant Golden Bell plaintiff's sole and exclusive agent for the sale and distribution of the works[3]. See, **Docket No. 12-7**, ¶ 1(G). Defendants had total control over distribution, production, marketing, sales, warehousing, and social media. Id., ¶ 2(E). Defendant Golden Bell assumed an obligation to commercially market and exploit the games. Id., ¶ 1(D). And, defendant has substantial power and leverage over plaintiff since it completely control access to all sales files, accounting records, and third-party vendors.

A fiduciary relationship exists where one person "is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." EBC 1, Inc. v. Goldman, 50

---

[3] Although the unnumbered 'headline' paragraphs mentions "against all defendants,"  plaintiff breach of fiduciary duty claim is against Golden Bell only.

N.Y.3d 11, 19 (2005). Liability derives from the relationship between the parties, and is not solely dependent on the terms of a contract between them. <u>Id.</u> Because the question whether a fiduciary duty exists within a business relationship is so fact sensitive, it is particularly ill-suited for resolution on a motion to dismiss. <u>Kidz Cloz, Inc. v. Officially For Kids, Inc.</u>, No. 00 Civ. 6270 (DC), 2002 WL 392291, at 4-5 (SDNY 2002); <u>Sokol Holdings, Inc. v. BMB Munai, Inc.</u>, 726 F. Supp. 2d 291, 306 (SDNY 2010), <u>aff'd in part</u>, 438 Fed.Appx. 45 (2d Cir. 2011).

This case is quite similar to <u>Impax Media v. Northeast Advertising Corp.</u>, 2018 WL 3962841 (S.D.N.Y 2018). <u>Impax</u> denied a Rule 12(b)(6) motion to dismiss a complaint asserting breach of contract and breach of fiduciary duty claims by an advertising services company against its exclusive sales agent. Regarding the breach of fiduciary duty claim, the Court stated:

> The Defendants contend that the breach of fiduciary duty claim…is encompassed by its breach of contract claim, and must therefore be dismissed. While Defendants are correct that a breach of fiduciary duty that "covers the precise subject matter" of a breach of contract claim cannot stand, that is not the case here. The facts underlying the breach of fiduciary duty claim are distinct from those alleging breach of contract.

<u>Id.</u>, p. 7.

Here, the facts regarding defendants' breach of their fiduciary duty are separate and different from those supporting plaintiff's breach of contract claim. Specifically, plaintiff alleges that Golden Bell breached its *non-contractual duties* towards plaintiff by:  failing to account for sales, <u>see</u>, **Docket No. 12**, ¶ 194, competing with him by trying to trademark works they did not own, <u>id.</u>, ¶¶ 75, 136, 209 and damaging his reputation and relationships with other game developers in the industry. <u>Id.</u>, ¶¶ 138, 144, 202.

Even if the Court finds plaintiff's fiduciary duty claim alleges facts common to his breach of contract claim, it should still permit both claims to proceed to discovery. As the Court in <u>Impax</u> wrote:

11

Moreover, the same conduct constituting the breach of a contractual obligation may also constitute breach of a duty arising out of the relationship created by the contract but independent of the contract itself. <u>See</u>, <u>e.g.</u>, <u>Mandelblatt v Devon Stores, Inc.</u>, 132 A.D.2d 162, 167-68 (1st Dep't 1987). Contract and tort claims arising out of the same transaction or occurrence may coexist so long as the tort claims relate to non-contractual duties, including fiduciary duties. <u>See</u>, <u>e.g.</u>, <u>Andersen, Weinroth & Co., L.P. v. Weinroth</u>, 48 A.D.3d 121, 136, 849 N.Y.S.2d 210, 222 (1st Dep't 2007); <u>Rodin Properties-Shore Mall, N.V. v. Ullman</u>, 264 A.D.2d 367, 368, 694 N.Y.S.2d 374, 376 (1st Dep't 1999); <u>Apple Records, Inc. v. Capitol Records, Inc.</u>, 137 A.D.2d 50, 55, 529 N.Y.S.2d 279, 281-82 (1st Dep't 1988).

<u>Id.</u>, p. 8.

### E.    Plaintiff's Causes of Action for Unjust Enrichment, a Constructive Trust, and an Accounting Are Asserted Against Non-Parties to the Contract.

Defendants argue plaintiff's claims for unjust enrichment, constructive trust, and an accounting are duplicative of his breach of contract claim. <u>See</u>, Docket No. 30, pp. 11-13, Points VII-IX. This is legally incomplete for three (3) reasons.

First, a *fiduciary* is unquestionably the proper party for each of these claims, and if the Court permits plaintiff to proceed on his breach of fiduciary duty claim then it should likewise permit plaintiff to go forward with these ancillary claims.  Defendants do not argue otherwise.

Second, if the Court permits plaintiff to proceed on his declaratory judgment claim, then one potential outcome will be that the Court voids the Agreement. If that happens, then plaintiff's ancillary claims are not barred by the Agreement's existence and terms.

Third, the only defendant party to the Agreement is Golden Bell.  <u>See</u>, **Docket No. 12-1**, **Docket No. 12-7**. Marc Goldner and GB Studios are non-parties, and cannot properly raise the Agreement as a defense to the ancillary claims. However, according to defendants,  GB Studios is currently holding the rights in the games and intellectual property under dispute. See **Exhibit 2** (letter from defendants' counsel to plaintiff asserting their interest in the two disputed games). Exhibit 2 is not part of the Complaint or **Docket No. 12-1**, but should be considered in connection

with defendants' Rule 12(b)(1) motion. <u>See</u> Section H.3. *supra*.

## F.    <u>Fraud in the Inducement is Properly Pled</u>

In <u>Cortes v. 21st Century Fox Am., Inc.</u>, 751 F. App'x 69 (2d Cir. 2018), the Second Circuit

wrote:

> [T]o state a claim for fraudulent inducement under New York law, a plaintiff must allege "(1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury." <u>*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*</u>, 404 F.3d 566, 580 (2nd Cir. 2005). Federal Rule of Civil Procedure 9(b) requires that, to be pursued in federal court, any such claims be pleaded with particularity; that is, they must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>*Lerner*</u>, 459 F.3d at 290 (citation omitted).

Under Fed. R. Civ. P. 9(b), "[m]alice, intent, knowledge, and other condition of mind of a

person may be averred generally."  Plaintiff must allege facts that give rise to a strong inference of

fraudulent intent." <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation

marks and citation omitted). This may be done by either (a) alleging facts to show that defendants

had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." <u>Shields v. Citytrust Bancorp,

Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994).

Moreover, misrepresentations and false statements made *before* signing the Agreement which

were collateral to its terms and made for the purpose of inducing plaintiff to enter can form the basis

of a fraudulent inducement claim sufficient to withstand a Rule 12(b)(6) motion. <u>Estrada v. Dugow</u>,

2016 U.S. Dist. Lexis 44284 (SDNY 2016).

The Complaint contains at least three (3) written statements by defendant Marc Goldner

("Goldner") which when taken together fraudulently induced plaintiff to sign the Purchase

13

Agreement on February 12, 2017 ("Agreement"). **Docket No. 12-7**. Plaintiff alleges the statements were false and were intended to induce him to enter into the Agreement, that he relied on the statements, that he would not have signed the Agreement but for the statements, and that he suffered damages. See, **Docket No. 12**, ¶¶ 117, 118, and 124.

Goldner had both motive and opportunity to commit fraud. His motive was to convince plaintiff to do business with him even though plaintiff at the time of the initial contact had a completed game already done and ready to commercialize. Id., ¶¶115, 116, and 119.  Goldner's opportunity was his email statements to plaintiff prior to the signing of the Agreement.

> a.  We Sell Well Over 10,000 Units Per Quarter

On January 1, 2017, Goldner emailed plaintiff and stated: "We sell over 10,000 units a quarter, so 25,000 over the course of even a year is way less than what we're looking at." See, **Docket No. 12**, ¶ 117, **Docket No. 12-4**. This statement represented a presently existing fact and is material because it related directly to the core of the proposed business relationship: how many units of plaintiff's games defendants would sell. As the statement involved a presently existing fact known only by Goldner (or, alternatively, it was not something plaintiff could reasonably expect to investigate), then plaintiff could reasonably expect to rely upon it.  Since the statement is alleged to be false, it gives rise to a reasonable inference of fraudulent intent. Plaintiff's damages consist of the lost business and revenue and lost value of his intellectual property he would have earned and retained if he did not sign the Agreement.

> b.  We Expect 10,000 Minimum Order Purchases

On January 1, 2017, Goldner emailed plaintiff and stated: "At NY Toy Fair next month alone we expect minimum order purchases from Toys R Us, Target, and Wal-Mart, and BJs separately." See,

**Docket No. 12**, ¶ 117, **Docket No. 12-4**. This statement represented a future fact and is material because it related directly to the core of the proposed business relationship: how many units of plaintiff's games defendants would sell. Since the statement involved a future fact known only by Goldner (or, alternatively, was is not something plaintiff could reasonably expect to investigate), then plaintiff could reasonably expect to rely upon it.  As it is alleged to be false, then it gives rise to a reasonable inference of fraudulent intent. Plaintiff's damages consist of the lost business and revenue and lost value of his intellectual property he would have earned and retained if he did not sign the Contract.

      c.   We Paid $20,000.00 to one Artist Last Quarter

On January 1, 2017, Goldner emailed plaintiff and stated: "As mentioned, last quarterly the Movie Buff creators were paid $20,000.00 from JUST Amazon sales and this doesn't include other outlets and avenues we pursue." <u>See</u>, **Docket No. 12-4**.  This statement represented a past fact and is material because it related directly to the core of the proposed business relationship: how much revenue plaintiff would receive from defendants. Because the statement involved a past fact known only by Goldner (or, alternatively, it is not something plaintiff could reasonably expect to investigate), then plaintiff could reasonably expect to rely upon it.  Since it is alleged to be false, then it gives rise to a reasonable inference of fraudulent intent. Plaintiff's damages consist of the lost business and revenue and lost value of his intellectual property he would have earned and retained if he did not sign the Agreement.

      Taken together, the three separate statements support a reasonable inference of fraudulent intent. This is especially true since Goldner does not in his moving papers argue that any of the statements made by him were true at the time they were made or that there was a non-fraudulent reason for making them if they were untrue.

**G.**      **Libel is Properly Pled**

The elements of a cause of action for libel under New York law are: (a) a written defamatory statement of fact concerning the plaintiff; (b) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the allegedly defamatory statement; and (5) special damages or a statement that is defamatory on its face. Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 176 (2nd Cir. 2000).

Certain statements are considered libelous *per se.* They are limited to four categories of statements that: (a) charge plaintiff with a serious crime; (b) tend to injure plaintiff in its business, trade, or profession, (c) plaintiff has some loathsome disease; or (d) impute unchastity. Liberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). Where statements are libelous *per se,* the law presumes that damages will result and need not be separately proven.

Goldner's written statement was an email dated November 21, 2018, and it was published to Jonathan Rawlings. See, **Docket No. 12**, ¶ 155; **Docket No. 12-29**. The statement alleges plaintiff falsely "warranted" that he owned intellectual property which he did not in fact own, and that he improperly "pocketed" money in dealings with another game artist.  The allegation that plaintiff "pocketed" money taken from another game artist can constitute the serious crime of larceny under New York State Penal Law § 155.05(1), or (2).  The statement is libel *per se* and damages are presumed.

**H.**      **Plaintiff Does Not Assert A Cause of Action to Peirce the Corporate Veil**

Defendants' request to dismiss all claims asserted against "all defendants" for failure to properly plead facts sufficient to pierce the corporate veil mischaracterizes the Complaint. See, Defendants Marc Goldner and Golden Bell Studios, LLC's Memorandum of Law in Support of Their

16

Motion to Dismiss Plaintiff Jason Wiseman's Amended Complaint, pp. 3-6, Point III ("MOL").

Plaintiff does not seek such relief at this time, and there is no reason for the Court to spend time or resources on a hypothetical. The sole basis for defendants' argument seems to be that some of the non-numbered 'headline' paragraphs in the Complaint contain the words "against all defendants."

## I.    **Declaratory Relief is Properly Pled**

In <u>Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC</u>, 56 F. Supp. 3d 436, 446 (S.D.N.Y. 2014)(AJN), this Court wrote:

> Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such a declaration," provided that the case otherwise falls within the court's jurisdiction. 28 U.S.C. § 2201(a). The Second Circuit has held that "a court *must* entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (emphasis added).

Plaintiff alleges two distinct controversies with defendants: (a) the legal status of the Agreement and its addenda, and (2) the legal relations between the parties regarding a purported option on two games and future games developed by plaintiff.

### 1.   Defendants Should Be Estopped from Challenging Jurisdiction

The Court should estop defendants from arguing that it lacks jurisdiction to determine the rights and obligations of the parties respecting the Agreement  because they and their counsel have previously conceded and argued to United States Patent and Trademark Office that its validity and enforceability *can only* be decided in this Court. Attached as **Exhibit 1** is defendant's May 6, 2019, motion to dismiss a cancellation proceeding for the trademark *Webcomic Name*.  The game

Webcomic Name Game is one of the four works that are subject of the Agreement, <u>see</u>, **Docket No. 12**, ¶¶ 49-53, 170.

Defendants argued to the USPTO that the question whether the Agreement was enforceable can only be decided in a declaratory judgment action in the District Court. <u>Id.</u>, pp 5-7. They cannot fairly be heard now only one week later to tell this Court that it lacks jurisdiction over declaratory judgment action regarding the enforceability of exact same Agreement.  Judicial integrity cannot be trifled with so cavalierly. <u>See</u>, <u>Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.</u>, 2009 US Dist. Lexis 55168 (SDNY 2009).

2.   The Agreement

Paragraphs 58-59, and 197-205 of the Complaint discusses the Agreement, its addenda, and the facts and circumstances under which they were executed. Plaintiff seeks a determination that the Agreement and addenda are void or voidable.  A decision will settle the issue and afford relief from the uncertainty and insecurity regarding the business relationship between the parties. Defendants note in Point X of their brief that the request to void the Agreement and addenda contradicts plaintiff's breach of contract claims. Such alternative and inconsistent claim are expressly permitted by Fed. R. Civ. P. 8(d)(2) and (3).

Defendants' cases on the subject of duress are all inapplicable to a Fed. R. Civ. P 12(b)(6) motion.  <u>Wolfson v. Wolfson</u>, 2004 US. Dist. Lexis 1485 (SDNY 2004), and <u>Silverberg v. SLM Acquisitions LLC</u>, 2017 US Dist. Lexis 27204 (SDNY 2017) were summary judgment decisions not addressing the required level of detail for a duress claim.  <u>Neuman v. Pike</u>, 591 F.2d 191 (2nd Cir. 1979), was an appeal following a non-jury trial.  And, <u>United States v. Twenty MILJAM-350 IED Jammers</u>, 669 F.3d 78 (2nd Cir. 2011), involved an application to vacate a settlement agreement in a

18

civil forfeiture proceeding.

Moreover, it is well settled that "economic duress is demonstrated by proof that one party to a contract has threatened to breach the contract by withholding performance unless the other party agrees to some further demand." see Banc of America Securities LLC v. Solow Bldg. Co. II, L.L.C., 47 A.D.3d 239 (1st Dept. 2007) quoting from Friends Lbr. v. Cornell Dev. Corp., 243 A.D.2d 886, 888, 663 N.Y.S.2d 327 (3rd Dept. 1997). See **Docket No. 12**, ¶ 204, **Docket No. 12**-1, ¶ 50.

Defendants' cite no authority for the notions that Fed. R. Civ. P. 9(b) applies to duress allegations in a declaratory judgment claim or that plaintiff must set forth in detail the facts and circumstances constituting duress in his complaint.

3.   The Games

Paragraph 209 of the Complaint identifies two trademark applications filed by defendants for games they and plaintiff both claim to own. Copies of the applications are attached as **Docket No.12-17** and **Docket No. 12-18**, respectively.  A cease and desist letter  sent by Goldner to plaintiff and others claiming an option on the two disputed games is attached as **Docket No. 12-23**, **Docket No. 12-31**, **Docket No. 12-32**, **Docket No. 12-33**.  See, also **Exhibit 2.**

Defendants' written claims that they own an option on plaintiff's future games created a real and reasonable apprehension of liability by plaintiff, and their continuous tortious conduct brought them into adversarial conflict. Plaintiff's request is primarily for this Court to determine the parties' *contractual rights* in connection to plaintiff's games.  A decision will settle the issue and afford relief from the uncertainty and insecurity regarding the ownership of the right to produce and market the games.

Defendants reliance on Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F Supp.2d

19

391 (SDNY 2011) and <u>Sasson v. Presse</u>, 2016 US Dist. Lexis 52902 (SDNY 2016) is misplaced. Both cases involved questions of trademark registration or infringement <u>only</u>. Plaintiff's declaratory judgment claim is rooted in the question of determining the *contractual rights* to plaintiff's games developed prior to entering into the Agreement, during the Agreement and after plaintiff terminated the Agreement, including all future games.   See **Docket No. 12**, ¶¶ 88, 91, 104 and **Docket No. 12-21, Docket No. 12-29**.

### J.    <u>The Amount in Controversy Exceeds $75,000.00</u>

Plaintiff acknowledges that the calculations that follow necessarily allow for some debate and disagreement. His burden at this time is to show only a "reasonable probability" that his damages exceed $75,000.00. <u>E.g.</u>, <u>Scherer v. Equitable Life Assurance Society of U.S.</u>, 347 F.3d 394 (2nd Cir. 2003).  Defendants, on the other hand, must prove to a "legal certainty" that plaintiff's damages cannot possibly exceed $75,000.00. <u>Id.</u>

New York law provides for two (2) classes of contract damages, and the disputed contract does not preclude either. First, compensatory damages which are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed. <u>E.g.</u>, <u>GW Holdings Group, LLC v. US Highland, Inc.</u>, SDNY 13, 2019 --- F.Supp.3d ----2019 WL 1173. Second, consequential damages, which are in this case lost profits or royalties caused by defendants' breach and which were specifically contemplated by the terms of the Agreement. <u>Ashland Mgmt., Inc. v. Janien</u>, 82 N.Y.2d 395, 403 (1993).

The Complaint alleges defendant breached its Agreement with plaintiff dated February 12, 2017. <u>See</u>, **Docket No. 12**, ¶¶ 24, 161-173; <u>See</u> also, **Docket No. 12-7**.  The Agreement required defendant Golden Bell to pay plaintiff money upon the delivery and sale of four (4) games: (a) "Pretending to

Grownup" ("Pretending"), (b) "Parenting Is Easy"("Parenting"), (c) "Turtles Riding Airships"("Turtles"), and (d) Webcomic Name Game ("Webcomic").

1. <u>Pretending</u>

Defendants agreed to pay or give plaintiff the following for Pretending:

1. $5,000.00 within 30 days of the Agreement. <u>See</u>, **Docket No. 12-7**, ¶ 1(D).  This amount was paid. <u>See</u>, **Docket No. 12**, ¶ 32.

2. $5,000.00 in September, 2018. <u>See</u>, **Docket No. 12-7**, ¶ 1(D). This amount has not been paid. <u>See</u>, **Docket No. 12**, ¶ 32.

3. $5,000.00 for each of three expansion packs for the game, for a total of $15,000.00. **Docket No. 12**, ¶ 34.  Plaintiff alleges he was ready, willing, and able to deliver the materials to defendants, but that the defendants refused to pay for them as agreed. Id.

4. An 8-10% royalty on net sales of 7,500 copies of Pretending, commencing after the first sale of the game, <u>id.</u>, and that as of the date of the complaint defendants were selling Pretending on its own website and Amazon.com for $29.95. **Docket No. 12**, ¶ 35. It is reasonable and appropriate for the Court to infer from the allegations of the complaint that as of the commencement of this action a sale has occurred and that the retail price of Pretending was $29.95.

5. 1,000 copies of Pretending. <u>See</u>, **Docket No. 12-7**, ¶ 1(D). It is reasonable and appropriate for the Court to infer from the allegations of the complaint that the value of each game to the plaintiff was $29.95. The defendant does not argue or claim an offset or credit for its cost to print and deliver this set of games to the plaintiff.

In light of these allegations, the total alleged money damages suffered by plaintiff

21

on account of Pretending is: (a) $5,000.00 for the missed September, 2018 payment, (b) $15,000.00 for failure to pay for the expansion packs, (c)  royalties of $2.40 per game ($29.95 x .08=$2.40) multiplied by 7,500 copies of the game, or $18,000.00, and (d) 1,000 copies of the game multiplied by 29.95, or $29,950.00. The combined total is $67,950.00.

2. Parenting

Defendants agreed to pay or give plaintiff the following for Parenting:

1. $6,250.00 within 30 days of the defendants receiving the final files for Turtles, and another $5,000.00 when plaintiff delivered the game files for Parenting. See, **Docket No. 12-7**, ¶ 1(I), **Docket No. 12**, ¶ 43.

2. Plaintiff alleges $3,125.00, leaving an unpaid balance $8,125.00.

The total alleged money damages suffered by plaintiff on account of Parenting is $8,125.00.

3. Turtles

Defendants agreed to pay or give plaintiff the following for Turtles:

1. $7,500.00 within 30 days of June 1, 2017, See, **Docket No. 12-7**, ¶ 1(G).  This amount was paid. See, **Docket No. 12**, ¶ 40.

2. $7,500.00 upon delivery of the final game files for Turtles. See, **Docket No. 12-7**, ¶ 1(G); **Docket No. 12,** ¶ 37. The files were delivered on June 15, 2017. **Docket No. 12**, ¶ 39.

3. The second $7,500.00 payment was not made. **Docket No. 12**, ¶ 41.

4. 1,100.00 copies of Turtles. See, **Docket No. 12-7**, ¶ 1(G).  Plaintiff alleges defendants have not commercially marketed Turtles. See, **Docket No. 12**, ¶ 42. It is reasonable and appropriate for the Court to infer from the facts alleged that if the defendants met their contractual obligations to plaintiff and actively marketed the game, then plaintiff would have

22

been able to sell 1,100 copies for the same price as Pretending ($29.95). This would have

resulted in $32,945.00 in income to plaintiff.

In light of these allegations, the total alleged money damages suffered by plaintiff

on account of Turtles is: (a) $7,500.00 for the missed payment due after plaintiff delivered the

Turtles files to defendants, and (b) $32,945.00 in income from the sale of plaintiff's 1,100 copies of

the game.  The combined total is $40,445.00.

4. Webcomic

Defendants agreed to pay or give plaintiff the following for Webcomic:

1. $6,250.00 within 30 days of the defendants receiving the final files for Turtles, and another

   $5,000.00 when plaintiff delivered the game files for Webcomic. See, **Docket No. 12-7**, ¶

   1(H); See, **Docket No. 12**, ¶ 49. The Webcomic files were delivered on October 2, 2018. See,

   **Docket No. 12**, ¶ 50.

2. Plaintiff alleges neither payment was made, and the total due is therefore $11,250.00.

3. 1,100.00 copies of Webcomic. See, **Docket No. 12-7**, ¶ 1(H); **Docket No. 12**, ¶ 49.

   Plaintiff alleges defendants have not printed or delivered his 1,100 copies of Webcomic. See,

   **Docket No. 12**, ¶ 52. It is reasonable and appropriate for the Court to infer from the facts alleged

   that if the defendants met their contractual obligations to plaintiff and actively marketed the

   game, then plaintiff would have been able to sell 1,100 copies for the same price as Pretending

   ($29.95). This would have resulted in $32,945.00 in income to plaintiff. In light of these

   allegations, the total alleged money damages suffered by plaintiff on account of Webcomic is: (a)

   $11,250.00 for the missed payment due after plaintiff delivered the Turtles files to defendants,

   and (b) $32,945.00 in income from the sale of plaintiff's 1,100 copies of the game.   The

23

combined total is $44,195.00.

Total Damages Alleged

Based on the allegations in the Amended Complaint, the Contract, and the reasonable inferences

that can be drawn from the allegations and Contract, the total amount of damages alleged is not

less than:

| | | |
|---|---|---|
| 1. | Pretending | $67,950.00. |
| 2. | Parenting | $8,125.00 |
| 3. | Turtles | $40,445.00 |
| 4. | Webcomic | $44,195.00 |
| | **Total:** | **$160,175.00** |

### K.     **Leave to Replead**

In <u>Dervan v. Gordian Grp. LLC</u>, No. 16-CV-1694 (AJN), 2017 U.S. Dist. LEXIS 176015

(S.D.N.Y. Oct. 23, 2017)(AJN), this Court wrote:

> As Plaintiff has already filed two amended complaints, further amendment is governed
> by Federal Rule of Civil Procedure 15(a)(2), which provides that a party may amend its
> pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.
> 15(a)(2). Although under this Rule courts generally should "freely give leave when justice so
> requires, there are times when granting such leave may be inappropriate." *Duckett v.
> Williams*, 86 F. Supp. 3d 268, 275 (S.D.N.Y. 2015) (internal quotation marks, citation, and
> brackets omitted). The Court "has broad discretion in deciding whether or not to grant such a
> request." *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316
> (S.D.N.Y. 2010) (citations and quotation marks omitted). Factors relevant to the Court's
> discretion include: (1) the presence of bad faith, dilatory motives, or undue delay on the part
> of the movant; (2) the movant's repeated failure to cure deficiencies by amendments
> previously allowed; (3) the potential for undue prejudice to an opposing party; and (4)
> whether the sought-after amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83
> S. Ct. 227, 9 L. Ed. 2d 222 (1962).
>
> Most relevant here, a motion to amend may be denied as futile if the "amended portion of the
> complaint would fail to state a cause of action." *Parker v. Columbia Pictures Indus.*, 204
> F.3d 326, 339 (2d Cir. 2000); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F. 3d 229,
> 244 (2d Cir. 2007) (a proposed amendment must be "sufficient to withstand a motion to
> dismiss under 12(b)(6)"). Thus, the proposed amendment "must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.
> Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp.
> v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has

24

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

Unless amendment is clearly futile, "this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam). If a court finds that amendment may cure the defect that resulted in dismissal, leave to amend should normally be granted. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Metro. Life Ins. Co. v. Sicoli & Massaro Inc. Pension Trust*, No. 15-CV-7141(PGG), 2016 U.S. Dist. LEXIS 131443, 2016 WL 5390899, at *9 (S.D.N.Y. Sept. 26, 2016).

Plaintiff requests leave to replead the Complaint to clarify and consolidate the required allegations in one document. Plaintiff is aware of  Rule 3(f) of the Court's Individual Practices in Civil Cases but believes he is ineligible to replead as of right as he previously amended the complaint.

## Conclusion

The  Complaint and accompanying declarations, and the reasonable inferences that the Court can draw from those documents allege all the required elements of the causes of action pled.  The amount in controversy exceeds $75,000.00 using conservative estimates and calculations. Consequently, the Court should deny defendants' motion to dismiss the Amended Complaint.

Dated: New York, New York
　　　　　May 13, 2018　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　CHINTA, PERDOMO, BERKS &
　　　　　　　　　　　　　　　　FRATANGELO, LLP.
　　　　　　　　　　　　　　　　By:　　/s/ Francelina M. Perdomo
　　　　　　　　　　　　　　　　Francelina M. Perdomo (FP 4429)
　　　　　　　　　　　　　　　　Antoaneta V. Tarpanova (AT 2287)
　　　　　　　　　　　　　　　　17 State Street, Suite 4000
　　　　　　　　　　　　　　　　New York, NY 10004
　　　　　　　　　　　　　　　　Telephone: (212) 274-1261
　　　　　　　　　　　　　　　　fperdomo@chintaperdomo.com