**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| Alexander D. Norris<br><br>　　　　　　　　　　　　Petitioner,<br>v.<br>Golden Bell Entertainment, LLC<br><br>　　　　　　　　　　　　Registrant. | **Cancellation Proceeding No:** 92070899<br><br>**Registration No.:** 5629281<br><br>**For the Mark**: WEBCOMIC NAME |

**REGISTRANT GOLDEN BELL ENTERTAINMENT, LLC'S MOTION TO DISMISS PETITIONER ALEXANDER D. NORRIS' PETITION FOR CANCELLATION**

**I.    Preliminary Statement**

Petitioner seeks cancellation of Registrant's mark on the basis that the contract through which Registrant obtained its rights in the mark is "inadequate." Although Petitioner seems to admit that the contract did convey *some* rights, it argues that it did not convey *these* rights because the agreement is "inadequate" and not "sufficiently definite." In other words, Petitioner presumes, that the agreement between Registrant and Petitioner is invalid, then seeks cancellation of Registrant's Mark on the basis of its own presumption. As a backup, Petitioner also presumes that another agreement between Registrant and a third party is also invalid, while admitting that the Southern District Court of New York action in which Petitioner's counsel has challenged that same agreement has not yet been decided.

As Petitioner admits that both agreements were signed and entered into, both agreements are assumed valid. Petitioner may not simply declare them otherwise and seek the remedies it would be entitled to if a court ruled so. Because the Board's administrative power does not extend to the issuance of declaratory relief, it is unable to determine the threshold issue upon which

Petitioner's entire cancellation petition rests. Therefore, the Petition for Cancellation must be dismissed.

## II.     Statement of Facts

The following facts are taken from Petitioner's Petition for Cancellation. Petitioner *conceived* the mark "Webcomic Name" in 2016. (Pet. ¶2). In 2017, Petitioner *co-created* a game entitled "Webcomic Name Game," which became subject to an agreement between Registrant and Petitioner's co-creator (the "Purchase Agreement"). (Pet. ¶5). Under the Purchase Agreement, Registrant became the exclusive publisher for Webcomic Name Game. (Pet. ¶6). Following the execution of the Purchase Agreement, Petitioner executed a Collaboration Agreement with Registrant through which the parties agreed would assign rights "solely in connection to the Game." (Pet. ¶7).

Tellingly, the Petition for cancellation then pivots to voiding the Collaboration Agreement and the Purchase Agreement through which, as Petitioner admits, Registrant acquired certain rights in the Mark. First, Petitioner alleges that the Collaboration Agreement is "inadequate" because the "terms embodied in the Agreement were not sufficiently definite . . . to create a binding contract between the parties that would ultimately transfer additional rights in the Game." (Pet. ¶8). Next, Petitioner implies that the Collaboration Agreement should not be acknowledged, without specifically pleading what remedy it seeks, because Registrant "fails to provide for valid consideration" for the Collaboration Agreement. (Pet. ¶9).

As backup, Petitioner turns to the Purchase Agreement between Registrant and a third party, seeming to mistake an agreement having been challenged in federal court for an agreement being unenforceable or declared void. (Pet. ¶10).

Next, Petitioner briefly shifts to its use, which is irrelevant if the Mark was assigned to or purchased by Registrant via the Collaboration Agreement. This is demonstrated by Petitioner's insistence that the agreements are "inadequate," "not sufficiently definite," or subject to a federal action.

Finally, Petitioner states that it has "applied for the registration of Webcomic Name" in Ser. No. 88/216,127.

On the basis of these "facts," as grounds for cancellation, alleges likelihood of confusion and priority, alleges that Registrant has not used the Mark in commerce, alleges that Registrant is not the rightful owner of the Mark, and alleges that the Mark was obtained fraudulently. In sum, questions that would require the voiding of Purchase Agreement and Collaboration Agreement.

As a whole, it is clear that the Petition for Cancellation actually represents a request for the Board to determine the validity of two agreements, neither of which are attached to the Petition, and only one of which Petitioner is a party. The Board is not empowered to render such a judgment. Further, because each ground for cancellation rests on the determination regarding the agreements, each falls flat from the outset.

**III.    Argument**

    **A.    Each Ground for Cancellation Stands and Falls with the Validity of the Collaboration Agreement.**

It is without question that on a motion to dismiss, the Board is required to make reasonable presumptions in favor of Petitioner to fairly adjudicate the motion. However, when the core necessary presumption is a legal conclusion that would require a declaratory ruling, the Board must first determine whether it has jurisdiction to make such a ruling.

Each of Petitioner's grounds for cancellation would require a threshold ruling that the Collaboration Agreement and/or the Purchase Agreement are invalid, unenforceable, or did not

convey the rights to this Mark. Otherwise, Petitioner would not have the requisite standing to bring the petition, as it would not be an aggrieved party.

Petitioner first argues, citing to 15 U.S.C. §1052(d), that "Registrant's use of the Mark will create confusion, mistake, or deception resulting in damage and injury to Petitioner." (Pet. ¶24). However, without first determining that the agreements did not, in fact, provide Registrant with the rights in the Mark, Petitioner's claim fails from the start. If Registrant acquired Petitioner's rights, there can be no confusion, priority disputes, or injury.

Next, Petitioner argues that Registrant is not the rightful owner of the mark. Tellingly, Petitioner's claim is prefaced with "Petitioner never made a blanket assignment of rights in the Mark . . . to Registrant." (Pet. ¶30). This is Petitioner's interpretation of the Collaboration Agreement, so in order to determine this claim, the Board would be required to make a determination over the validity of the contract.

Third, Petitioner argues that Registrant's application was fraudulent. In support, Petitioner states that Registrant's statements regarding ownership and use were all fraudulent because they were made knowing "that Petitioner never assigned Petitioner's Mark to Registrant." (Pet. ¶31(i)). This fails on two levels. First, it is premised on Petitioner's own determination of the validity of the contract. Second, even if the Board, or a court of competent jurisdiction, ultimately decides that the scope of the contract did not assign the rights, impugning intent on this basis would be unreasonable.

Finally, Petitioner alleges that Registrant did not use the Mark in commerce, despite conceding that Registrant has taken pre-orders and produced items. Petitioner disregards the specimen of use filed with the Registration showing advertising and displaying the Mark in commerce at a convention. Nonetheless, this claim stands and falls with the threshold question of

4

whether or not the Collaboration Agreement is valid. Without a finding that it is not, Petitioner cannot be considered an aggrieved party, as it no longer has rights in the Mark.

### B. Legal Standard for a Motion to Dismiss

"A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a test of the sufficiency of the complaint. To survive a motion to dismiss, a claimant need only allege sufficient factual matter as would, if proved, establish that: (1) she has standing to maintain the claims; and (2) valid ground exists for cancelling the registration. For the purposes of determining the motion, all of claimant's well-pleaded allegations must be accepted as true, and the claims must be construed in the light most favorable to claimant."

Importantly, "the Board is an administrative tribunal of the United States Patent and Trademark Office empowered to determine the right to register only." *Carefirst of Maryland, Inc. v. FirstHealth of the Carolinas, Inc.*, 2005 TTAB LEXIS 406 at *5 (TTAB 2005). It "is not a court of general jurisdiction," *Precious Marketing Group, LLC v. Tashey T. Dennie*, 2012 TTAB LEXIS 106 at *2 (TTAB 2012), and "the Board is not empowered to render [a declaratory] judgment, which petitioner must seek from an appropriate court." *Kelly Services, Inc. v. Greene's Temporaries, Inc.*, 1992 TTAB LEXIS 57 at *14 (TTAB 1992).

### C. The Board has not been Statutorily Authorized to Determine the Scope and Validity of the Purchase Agreement and Collaboration Agreement.

Whether Petitioner has standing to bring this cancellation petition depends entirely on the jurisdiction of the Board. If the Board is empowered to determine the validity of the Collaboration Agreement and/or the Purchase Agreement, then issue declaratory judgment that the agreement is void, then Petitioner would have standing sufficient to bring a claim for cancellation. However, if the Board does not have jurisdiction over the validity of the contracts, or if the declaratory action

is decided in favor of Registrant, Petitioner would have no standing because it would not be injured by Registrant's registration of the Mark, as it assigned its rights thereto to Registrant.

"The Board is an administrative tribunal with jurisdiction over the question of registrability of U.S. trademarks." *Australian TheraPeutic Supplies Pty. Ltd v. Naked TM, LLC*, 2018 TTAB 437 at *14 (TTAB 2018). The Board has held that "[t]he Board may consider the terms of a contract if, and to the extent that, construction of the contract is necessary to a decision on matters within the Board's jurisdiction." *Id.* However, the same decision acknowledged that "other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of that contract." In *Australian TheraPeutic*, the marks in question were "NAKED" and "NUDE," in the same category, and the purported agreement was an oral agreement that each party could use and register its own mark. The matter fell within the Board's jurisdiction because the determination to be made was the registrability of the Naked and Nude marks, which could be answered independently of the agreement, but also that it could interpret the agreement within the scope of that decision. For example, the Board could find that registrant's Nude mark was or was not likely to create consumer confusion in relation to petitioner's Naked mark, regardless of the contract. Thus, because the registrability was not exclusively determined by the agreement, the matter fell within the the Board's limited jurisdiction.

In contrast, the Board has also stated that it is empowered by statute to determine the "right to register only" and that it "has no authority to determine the right to use, or the broader questions of infringement or unfair competition." *Carefirst of Maryland, Inc. v. FirstHealth of the Carolinas, Inc.*, 2005 TTAB LEXIS 406 at *5 (TTAB 2005). Importantly, the Board has also acknowledged that it is "not empowered to render [a declaratory] judgment" and that a "declaratory judgment must be obtained from an appropriate court, not the Board." *New Jersey Turnpike Authority v.*

6

*Jersey Boardwalk Franchising Co., Inc.; New Jersey Turnpike Authority v. Boardwalk Pizza, Inc.*, 2018 TTAB LEXIS 186 at *48 (TTAB 2018). This is true regardless of whether the request is coined as declaratory relief or not. For instance, in *Precious Marketing Group, LLC v. Tashay T. Dennie*, 2012 TTAB LEXIS 106, opposer filed an opposition petition that the Board deemed "akin to a response to a likelihood of confusion refusal by an examining attorney." The Board stated, "[i]n essence, opposer is seeking a declaratory judgment that there is no likelihood of confusion. However, the Trademark Trial and Appeal Board is an administrative tribunal, established by statute for narrow and specific purposes, and is not a court of general jurisdiction." *Id.* at *2.

Accordingly, the Board must determine whether the validity of the contract is ancillary to Petitioner's claim, such that the Board can determine the rights and remedies within its statutory bounds as it could in *Australian TheraPeutic*, or whether the "essence" of the claim is one for declaratory judgment, at which point the claim must be brought in a court of general jurisdiction. Here, there is no dispute that the cancellation relates to a single mark: "Webcomic Name." Because the question of registrability here does not relate to the interplay between different marks, and instead hinges entirely on the agreement, the Board should follow the latter line of cases.

Petitioner pleads that the game "Webcomic Name Game" was "the subject of a Purchase Agreement between" Registrant and a third-party. Petitioner pleads that Petitioner and Registrant discussed a Collaboration Agreement which would assign rights to Registrant in connection to the Game. Petitioner pleads the Petitioner "signed the Collaboration Agreement." Thus, it is clear that the agreements, in some way, determine the rights relating to the Mark.

Next, Petitioner attempts to plead that the Collaboration Agreement is not valid and thus, did not assign the rights to this Mark, stating that "[a] quick review of the Collaboration Agreement shows that it is inadequate, particularly as a vehicle to transfer any rights on [sic] the Mark

'Webcomic Name.'" Petitioner then lists its alleged reasons to void the contract: "it fails to mention numerous material terms," that the name of the game was tentative, that the terms were not sufficiently definite to create a binding contact, and that the contract failed "to provide for valid consideration." (Pet. ¶ 8). Clearly, this is a claim for declaratory judgment that the Collaboration Agreement is void or unenforceable. This is reinforced in Petitioner's next argument, which it begins by stating, "[n]onetheless, even if the Agreement is binding, which it is not . . . ." (Pet. ¶10).

Petitioner next refers to the Purchase Agreement between Registrant and a third party and states the it "is currently being challenged in the . . . Southern District of New York."[1] (Pet. ¶10). Ironically, in the Southern District of New York action, the plaintiff, represented by the same counsel as Petitioner herein, brought an action against Registrant for declaratory judgment relating to the validity and scope of the Purchase Agreement.

Thus, the cancellation of the Mark would necessarily require a declaratory ruling as to the validity of the Collaboration Agreement, and because such a ruling exceeds the Board's limited administrative jurisdiction, the Petition for Cancellation should be dismissed in its entirety.

## IV. Conclusion

For the foregoing reasons, even when the facts alleged by Petitioner are deemed true, the petition fails to adequately allege standing, as the Board would be required to exceed its statutory authorized powers to void the Collaboration Agreement in order for standing to exist. Therefore, the Petition for Cancellation should be dismissed in its entirety.

---

[1] It is worth noting that the plaintiff in the Southern District of New York action is the co-creator of the Webcomic Name game. Thus, if this action were brought in the proper forum, it is likely that said plaintiff would be a necessary party to the action to determine the underlying intents of the parties, as well as the rights and remedies upon determination of the declaratory action.

Dated: New York, New York
      May 6, 2019

                                        Respectfully Submitted,

                                        **Garson, Segal,**
                                        **Steinmetz, Fladgate LLP**
                                        *Attorneys for Registrant*

                              By:        /s/
                                        Kevin Kehrli
                                        Andrea Terese Timpone
                                        164 West 25th Street, Suite 11R
                                        New York, NY 10001
                                        Telephone: (212) 380-3623
                                        Facsimile: (347) 537-4540
                                        Email:KK@GS2Law.com;
                                        AT@GS2Law.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2019, a true and correct copy of this motion to dismiss was served on Petitioner by electronic mail to its counsel, Antoaneta V. Tarpanova at atarpanova@chintaperdomo.com.

Dated: New York, New York
       May 6, 2019

                                            By:      /s/
                                                Kevin Kehrli
                                                164 West 25th Street, Suite 11R
                                                New York, NY 10001
                                                Telephone: (212) 380-3623
                                                Facsimile: (347) 537-4540
                                                Email: KK@GS2LAW.COM