UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JASON WISEMAN, d/b/a JASON ANARCHY
GAMES, WISEMAN INNOVATION

                        Plaintiff,                        Case No. 1:19-cv-01282-AJN

    v.

Marc Goldner, individually and as officer of
GOLDEN BELL ENTERTAINMENT LLC
and GOLDEN BELL STUDIOS, LLC, and
GOLDEN BELL ENTERTAINMENT LLC
and GOLDEN BELL STUDIOS, LLC

                       Defendants.
------------------------------------------------------------X

**DEFENDANTS GOLDEN BELL ENTERTAINMENT LLC,
GOLDEN BELL STUDIOS, LLC, and MARC GOLDNER'S
JOINT MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION
AND IN FURTHER SUPPORT OF
DEFENDANTS' MOTIONS TO DISMISS
THE AMENDED COMPLAINT**

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**
Kevin Kehrli, Esq.
Andrea T. Timpone, Esq.
164 West 25th Street, Suite 11R
New York, New York 10001
Tel: (212) 380-3623
Fax: (347) 537-4540
kk@gs2law.com
*Attorneys for Defendants*

# Table of Contents

A. TO THE EXTENT THE COURT INTERPRETS PLAINTIFF'S OPPOSITION AS A MOTION FOR LEAVE TO AMEND, IT SHOULD BE DENIED. . . . . . . . . . . . . . . . . . 1

    i.    Plaintiff's Request for Leave to "Replead" is Procedurally Deficient. . . . . . . . . . .1

    ii.    Plaintiff Waived his Right to Amend, and Allowing Plaintiff to Amend on the Grounds Stated in the Opposition Would Only Serve to Waste Judicial Resources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. PLAINTIFF'S OPPOSITION HEAVILY RELIES ON PROPOSED AMENDMENTS OF THE OPERATIVE COMPLAINT THAT HAVE NOT BEEN MADE IN THE AMENDED COMPLAINT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. EVEN WITH ITS PROCEDURAL DEFICIENCIES AND PROPOSED AMENDMENTS, PLAINTIFF FAILS TO ADDRESS THE DEFICIENCIES CITED IN DEFENDANTS' MOTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    i.    Plaintiff's Claim Under the Digital Millennium Copyright Act. . . . . . . . . . . . . . .6

    ii.    Plaintiff's Claim for Tortious Interference with Contractual Relations. . . . . . . . .7

        a.    McKay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        b.    Rawlings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        c.    Kickstarter Backers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    iii.    Plaintiff's Claim for Breach of Good Faith and Fair Dealing. . . . . . . . . . . . . . . .8

    iv.    Plaintiff's Claim for Breach of Fiduciary Duty. . . . . . . . . . . . . . . . . . . . . . . . . . .8

    v.    Plaintiff's Claims for Unjust Enrichment, Constructive Trust, and Accounting. . . .9

    vi.    Plaintiff's Claim for Fraud in the Inducement. . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    vii.    Plaintiff's Claim for Libel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    viii.    Plaintiff's Claims for Declaratory Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    ix.    Amount in Controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

D. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## Table of Authorities

## Table of Authorities

*Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*
    282 F.3d 83, 87 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Weldy v. Piedmont Airlines*
    1995 U.S. Dist. LEXIS 7958 *9-11 (N.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### Statutes

17 U.S.C. §512(f). . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Local Civil Rule 7.1 . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Defendants Golden Bell Entertainment, LLC ("GBE"), Golden Bell Studios, LLC ("GBS"), and Marc Goldner ("Goldner") (collectively, "Defendants") respectfully submit this joint memorandum of law in reply to Plaintiff Jason Wiseman's ("Plaintiff") Opposition to Defendants' Motions to Dismiss (Dkt. 31).

To address each procedural deficiency, reference to "facts" not pleaded in the Amended Complaint, legal shortcoming, and admission of pleading failure in Plaintiff's Opposition to Defendants' motions to dismiss would require significantly more than the allowed pages, and would be an inefficient use of the Court's resources. Rather, this Reply will cite the most fatal of the above, specifically, (i) Plaintiff's disregard for the Court's individual rules and deficient request for relief in the Opposition, (ii) Plaintiff's "amendment" of the causes of action and parties against which they are asserted in footnotes of the Opposition, and (iii) the more egregious attempts to retrofit the Amended Complaint into appropriate legal standards.

Golden Bell Entertainment's Motion to Dismiss states "at its most basic level, the Amended Complaint falls well short of apprising Defendants of the claims being made and the relief sought – a bare minimum in even the most liberal pleading standard." Dkt. 30. The footnotes alone in Plaintiff's Opposition show that this is unequivocally true.

Because Plaintiff's Opposition fails to address the shortcomings in the Amended Complaint, the Amended Complaint should be dismissed in its entirety.

**A. To the Extent the Court Interprets Plaintiff's Opposition as a Motion for Leave to Amend, It Should be Denied.**

i. Plaintiff's Request for Leave to "Replead" is Procedurally Deficient

Local Civil Rule 7.1 provides that all motions shall include the following motion papers: (1) a notice of motion, (2) a memorandum of law, and (3) supporting affidavits and exhibits thereto containing any factual information.

Plaintiff's request for leave contains none of the above. Instead, in the final paragraph of its Opposition, Plaintiff lackadaisically "requests leave to replead the Complaint to clarify and consolidate the required allegations in one document." In fact, Plaintiff offers no explanation as to what he intends to amend and why he needs to "clarify and consolidate the required allegations." Dkt. 31, p. 31. It is unclear what Plaintiff intends to add or remove from the currently operative pleading. The only reasonable take away from Plaintiff's request is a concession that Plaintiff's allegations are currently not in one document, but rather, are scattered across the Amended Complaint and Opposition. Without any of the required motion papers, legal standards, or basic information, Plaintiff's request must be denied.

<u>ii. Plaintiff Waived his Right to Amend, and Allowing Plaintiff to Amend on the Grounds Stated in the Opposition Would Only Serve to Waste Judicial Resources</u>

Following 24 pages to explain why Plaintiff's Amended Complaint should survive Defendants' motions to dismiss, Plaintiff "requests leave to replead the Complaint to clarify and consolidate the required allegations in one document." Dkt. 31, p. 31. Leaving aside that this is a tacit admission that by disregarding Your Honor's Individual Practices and filing this "Opposition," Plaintiff has wasted everyone's time with a profligate filing, it is also an admission of the countless shortcomings in the Amended Complaint. Due to Plaintiff's failures to cure defects and comply with the Court's Rules, the futility of another amendment, and Plaintiff's bad faith in filing this Opposition, the Court should deny Plaintiff's leave to amend.

Federal Rule of Civil Procedure 15 allows for one amendment of a pleading as a matter of course, then requires leave from the Court for further amendment. Plaintiff previously amended its Complaint on February 25, 2019. Dkt. 12. Further, Section 3.F. of Your Honor's Individual Practices states that "[w]hen a motion to dismiss is filed, the non-moving party must, within 10 days of receipt of the motion, notify the Court and its adversary in writing whether (i) it intends to

file an amended pleading and when it will do so, or (ii) it will rely on the pleading being attacked." Importantly, this rule does not defer to the assigned Magistrate Judge's Individual Rules, yet Plaintiff attempts in a footnote to blame Defendants for failing to observe them, stating that "Defendants' counsel failed to provide plaintiff with an opportunity to discuss a possible amendment . . . as per the Individual Practice Rules of Honorable Sarah Netburn." Dkt. 31, p.2, fn 1. Plaintiff did not avail himself of this opportunity. Your Honor's Individual Practices also state that "[n]on-moving parties are on notice that declining to amend their pleadings to timely respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing." It is clear that Plaintiff is attempting to circumvent the Court's rules and using his "Opposition" to strong-arm amendments into the Amended Complaint.

Motions for leave to amend a pleading should be freely granted when justice so requires. However, leave to amend will be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party. *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2001). The Opposition shows that Plaintiff seeks to amend only to add to the laundry list of conflicting statements and frivolous claims as a bad faith maneuver to drive up Defendants' litigation costs.

Further, amendment would be futile. First, Plaintiff has amended the complaint once and failed to cure the innumerable deficiencies shown in Defendants' motions. Dkt. 12. Second, even if the Court were to consider the new theories, "facts," and allegations presented in the Opposition and assume they will be included in a Second Amended Complaint, the pleading would still need to be dismissed, as it would still fall short of the pleading standards of the Court.  Last, Plaintiff devotes 24 pages explaining why his Amended Complaint should survive dismissal, and it has

3

only gotten more confusing.  Thus, allowing Plaintiff to amend again, despite Plaintiff's flouting of Your Honor's Individual Practices, would be futile.

**B. Plaintiff's Opposition Heavily Relies on Proposed Amendments of the Operative Complaint that have Not Been Made in the Amended Complaint.**

The Opposition is a series of footnotes changing key allegations, retrofitted arguments, and additional facts not pleaded in the Amended Complaint, which concludes with the admission of a need to "consolidate the required allegations in[to] one document."  If the Amended Complaint cannot stand without these additional footnotes and allegations, it should fall. While each failure cannot be fully addressed herein, those listed below show that the Amended Complaint has wholly failed to apprise Defendants of the claims being leveled at them, and should be dismissed. Defendants cannot reasonably be expected to defend themselves against scattershot complaints that are unpredictably twisted to have new meaning as the litigation progresses.

On numerous instances, Plaintiff "clarifies" mis-pleadings in the Amended Complaint, presuming that Defendants and the Court should have just known what Plaintiff actually meant.

In response to Defendants' argument that Plaintiff failed to state a claim for Tortious Interference with Contractual Relations, Dkt. 12 ¶¶ 5, 150(i), p.26, Plaintiff changes the cause of action in a footnote, and argues to support that he sufficiently pleaded *that* claim, stating "[w]hile the unnumbered 'headline' of the third cause of action refers to tortious interference with contractual relations, the actual numbered paragraphs contain all of the required elements of a claim for tortious interference with business relations." Dkt. 31, p.5, fn 2. While Plaintiff's claims should still be dismissed on the grounds stated in Defendants' motions, it is unreasonable for Defendants' to have to defend themselves against claims that were not pleaded.

Similarly, in footnote 3, Plaintiff states that "[a]lthough the unnumbered headline paragraphs mentions [sic] 'against all defendants,' plaintiff [sic] breach of fiduciary [sic] duty

claim is against Golden Bell only." Dkt. 31, p.10, fn 3. Among the allegations in the Seventh Cause of Action for Breach of Fiduciary Duty are: "Golden Bell agreed to act as Plaintiff's agent…;" "As agents, Defendants owed fiduciary duties…;" "Defendants are alter ego's [sic] to each other…;" and "Defendant's failure to pay…" Dkt. 12 ¶¶ 181, 182, 183. Therefore, Plaintiff managed to reference GBE directly, reference all Defendants collectively, reference some sort of veil-piercing argument, and now, in a footnote, say that he only meant GBE. Again, this is entirely insufficient to apprise Defendants of the claims.

Yet another instance of conflicting and vexing arguments (which also speaks to why amendment would be futile) is contained in Plaintiff's submissions related to fiduciary duties, an accounting, unjust enrichment, and constructive trust. As the aforementioned footnote states, despite the claim appearing to be "against all defendants" and containing references to all Defendants, what Plaintiff apparently meant was that it was only against GBE. In the very next section, Plaintiff asserts that the claims for accounting, unjust enrichment, and a constructive trust are made against GBS and Goldner. Next, despite stating that the fiduciary relationship only arose between GBE and Plaintiff, Plaintiff states, "a *fiduciary* is unquestionably the proper party for each of these claims." It is nonsensical.

Perhaps the most troubling of Plaintiff's responses, is his response to Defendants Goldner and GBS' argument that Plaintiff failed to state a claim to pierce the corporate veil, where Plaintiff simply stated that "Plaintiff does not seek such relief at this time." Dkt. 31, p. 23. Nonetheless, GBS and Goldner are named-defendants in every claim, except the ones leveled at Goldner alone. Indeed, Plaintiff asserts that those claims for an accounting, unjust enrichment, and constructive trust are directed *only* (perhaps?) at those Defendants.

It is difficult to know what conclusions to draw from this. First, it could be that Defendants do not understand what has been pleaded in the Amended Complaint, then explained for 25 pages

– this should favor dismissal.  Second, it could be that Plaintiff, without reasonable or legal justification, is unwilling to recognize that GBE, GBS, and Goldner are separate entities and an individual – this seems unlikely based on the inclusion of specific, albeit insufficient, wording contained in the Amended Complaint such as "control" and "alter ego."  Third, it could be that Plaintiff is willing to withdraw the claims against GBS and Goldner – this also seems unlikely as Plaintiff continues to use the three separate Defendants interchangeably in the Opposition.  Finally, it could simply be that Plaintiff is happy to purposely convolute matters to drive up Defendants' litigation costs.  Ultimately, any of those four conclusions and the reasons argued in Defendants GBS and Goldner's motion favor dismissal of the claims alleged "as against all defendants" as they relate to GBS and Goldner.

**C. Even with its Procedural Deficiencies and Proposed Amendments, Plaintiff Fails to Address the Deficiencies Cited in Defendants' Motions.**

The substance of Plaintiff's Opposition follows a pattern of procedural deficiencies and impromptu amendments, in that for each argument, Plaintiff argues that Defendants and the Court should have read-in information that was not contained in the Amended Complaint.

<u>i. Plaintiff's Claim Under the Digital Millennium Copyright Act</u>

Defendant GBS argued that Plaintiff failed to plead that the referenced Kickstarter was "taken down," which courts have deemed an essential element for a claim under 17 U.S.C. §512(f). Without citing to any authority, Plaintiff argues that a brief hold on distribution of the funds is the equivalent of a "takedown" that restricts *users'* access to the website. This is not the legal standard; thus, the Amended Complaint remains deficient.

ii. Plaintiff's Claim for Tortious Interference with Contractual Relations

Plaintiff seemingly concedes one common deficiency among the three separate interferences – the lack of a contract – and, in a footnote, changes his legal theory to tortious interference with business relations. Yet Plaintiff's attempt to retrofit to that claim still falls short.

    a. **McKay**

Rather than point to allegations pleaded in the Amended Complaint to respond to Defendants' position that Plaintiff failed to plead key elements of the cause of action, Plaintiff now alleges "the potential crime of making false statements to the United States Patent and Trademark Office." First, since this criminal allegation was not made in the Amended Complaint it will not be substantively addressed. Second, as argued in Defendant GBE's motion, Plaintiff's only allegation of interference was that a third party opposed a trademark that GBE applied for. As that opposition was withdrawn, there is no justifiable basis for Plaintiff's claim. Thus, the claim as it relates to McKay remains deficient.

    b. **Rawlings**

Rather than address his failure to allege a breach of contract by a third party or damages related thereto, Plaintiff seems to argue that his libel *per se* argument (which had to be clarified in the Opposition, as it was unclear from the Amended Complaint what type of libel claim was being made) grants Plaintiff presumed damages for his tortious interference claim. It does not, and the inclusion of the Rawlings Declaration shows that this claim must be dismissed.

    c. **Kickstarter Backers**

Plaintiff again, avoids addressing the shortcomings in the Amended Complaint, and instead, casts criminal allegations against Defendants to muddy the waters. Again, these allegations will not be substantively addressed. However, it is worth noting a new "fact" that appears in the Opposition; specifically, that Kickstarter backers demanded refunds. This was not

7

contained anywhere in the Amended Complaint, and the citation to a picture of the game (Dkt. 12-1) and a series of cut-off reviews (Dkt. 12-24) are insufficient to warrant the Court reading it into the Amended Complaint.

### iii. Plaintiff's Claim for Breach of Good Faith and Fair Dealing

Plaintiff seems to concede that the majority of the Amended Complaint in relation to this claim is duplicative of the breach of contract claim, but argues that its reference to Defendants' registering of unidentified trademarks in Paragraph 179 is not duplicative. Dkt. 12 ¶179. This fails for several reasons. First, it is unclear what trademarks Plaintiff is referencing. Second, for those marks allegedly owned by Plaintiff and registered by Defendants, the transfer of rights was explicitly governed by Section 1(a) of the Purchase Agreement (Dkt. 12-3). Third, for those unidentified marks allegedly owned by unidentified collaborators, Plaintiff does not have standing.

### iv. Plaintiff's Claim for Breach of Fiduciary Duty

Defendant GBE argued that the "fiduciary" duties alleged to have been breached were the same obligations alleged under the Purchase Agreement, and thus, were duplicative of the breach of contract claim. This is a perfect example of Plaintiff attempting to retrofit an argument into the proper framework. The conduct alleged in the Amended Complaint in support of the claim for breach of fiduciary duty was, in full, "Defendant's failure to pay Plaintiff, their threats to forego shipping . . . and their conduct in using the Kickstarter's pre-orders as leverage . . . were self-serving and against Plaintiff's interest." Dkt. 12, ¶183. Now, instead, Plaintiff says three *other* duties exist, citing to language included in support of other claims in the Amended Complaint. Frankly, Plaintiff is not *pro se*, and neither the Court nor Defendants' should be required to make repeated logical leaps to get to the bottom of the claims being asserted.

### v. Plaintiff's Claims for Unjust Enrichment, Constructive Trust, and Accounting

The confounding nature of Plaintiff's argument to support these claims is addressed above, but it is worth noting that the allegations in the Amended Complaint failed as duplicative, and rather than address these claims, Plaintiff simply confused matters further.

### vi. Plaintiff's Claim for Fraud in the Inducement

Defendant Goldner argued "simply dressing up a breach of contract claim by further alleging that the promisor had no intention . . . to perform . . . is insufficient" to state a claim for fraud in the inducement. Dkt. 27, p.8. Statements made regarding past sales of other games, anticipated sales of games, and past payouts of the games all relate to the performance under the agreement. Tellingly, Plaintiff pivots from its previous conflicting statements in the pleadings that stated that Defendants both never intended to commercially exploit the game and also intended to exploit the game but not pay Plaintiff.

### vii. Plaintiff's Claim for Libel

Defendant Goldner's arguments were based on the Declaration of Jonathan Rawlings, the recipient of the allegedly libelous statement, and the lack of clarity as to the type of libel Plaintiff was alleging. The declaration disproves damages, so a libel claim would have be *per se* to survive. As Plaintiff recognized that Defendant was correct, he attempted to strengthen his libel *per se* claim by asking the Court to consider a new statement not alleged in the Amended Complaint, and interpret Defendant's statement that Plaintiff "pocketed money" as an accusation that Plaintiff committed "the serious crime of larceny." Without postulating if this argument was made in good faith, two pertinent questions remain for the Court. First, whether a statement that Plaintiff admits did not cause him harm should still be considered libel *per se*. Second, even if the existence of compensatory damages is presumed, should the claim survive dismissal when the quantum of such

damages has been conclusively rebutted to zero. *See e.g.*, *Weldy v. Piedmont Airlines*, 1995 U.S. Dist. LEXIS 7958 *9-11 (N.D.N.Y.).

### viii. Plaintiff's Claims for Declaratory Relief

Plaintiff fails to substantively address Defendants' arguments, but instead says Defendants should be estopped from asserting jurisdictional arguments on the basis of an unrelated cancellation proceeding between GBE and a third party before the Trademark Trial and Appeal Board. There, Plaintiff's counsel, representing a non-party to this matter, seeks to void a contract in order to cancel the registration of that mark. The cases are not related. They are different parties and different contracts. Ironically, Plaintiff concludes by stating "judicial integrity cannot be trifled with so cavalierly," while seeking to amend a pleading through an Opposition in which alternative theories are presented, after disregarding the Court's individual rule specifically addressing amendments. Plaintiff's claim for declaratory relief in relation to the "trademarks" remains deficient as it fails to adequately specify the scope of the relief sought.

### ix. Amount in Controversy

It is troubling that Plaintiff's claims have gone from $1,000,000.00 to $160,175.00 in the blink of an eye. Defendants posit that the scattershot, kitchen-sink Amended Complaint and the Opposition do not warrant the presumption that the Amended Complaint is a good faith representation of the actual amount in controversy.

**D. Conclusion**

For the foregoing reasons, and those reasons argued in Defendants' motions to dismiss, Defendants respectfully request that Plaintiff's "motion" for leave to "replead" be denied, and Plaintiff's Amended Complaint be dismissed in its entirety.

Dated: New York, New York
      May 20, 2019                                      Respectfully Submitted,

                                                            **Garson, Ségal, Steinmetz, Fladgate LLP**
                                                             *Attorneys for Defendants*

                                          By:      /s/
                                                            Kevin Kehrli (KK1536)
                                                            Andrea Terese Timpone (AT5628)
                                                            164 West 25th Street, Suite 11R
                                                           New York, NY 10001
                                                           Telephone: (212) 380-3623
                                                           Facsimile: (347) 537-4540
                                                           Email:**KK@GS2LAW.COM**;
                                                           **AT@GS2LAW.COM**